IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **RHODES HOLDINGS, LLC, ET AL,** | : | **CASE NO. 13-33264** |
| Plaintiffs | | |
| | | Pending in the United States Bankruptcy Court for the Southern District of Texas, Houston Division |
| **vs.** | : | Removed from Cause No. 2013-CI-02253 in the 285th Judicial District Court of Bexar County, Texas |
| **DAVID GORHAM, ET AL,** | | |
| Defendants. | : | **ADV. PROC. NO.** |

## NOTICE OF REMOVAL

**TO THE HONORABLE JUDGE OF SAID COURT:**

Comes now MCI Partners, LLC ("MCI") and Terry Dunken, Jr. ("Dunken"), Defendants in the above-entitled matter, which files this Notice of Removal of a state court action styled *Rhodes Holdings, LLC et al. v. Gorham et al.*; Cause No. 2013-CI-02253, pending in the 285th Judicial District Court of Bexar County, Texas ("State Court Action" or "Removed Case") to the United States District Court for the Western District of Texas, San Antonio Division.

1.      Pursuant to 28 U.S.C. §1452(a) and Fed. R. Bankr. P. 9027, MCI files this Notice of Removal ("Removal") in the United States Bankruptcy Court for the Western District of Texas, as the State Court Action is pending in this District.

2.      The Removed Case is related to the captioned bankruptcy case which is pending in the Southern District of Texas. Therefore, pursuant to 28 U.S.C. §1452(a), the Removed Case may be removed to this Court and then transferred to the pending bankruptcy in the Southern District of Texas upon the filing of a motion to transfer. Movant will be filing a motion to

i

transfer.

3.      Jurisdiction of this case arises under 28 U.S.C. §1334 and 11 U.S.C. §§ 105 and

and 541. The Removed Case is a civil action other than a proceeding before the Tax Court or a

civil action by a governmental unit to enforce such governmental unit's police or regulatory

power. As grounds for this Removal, MCI and Dunken respectfully submit the following:

**Venue**

4.      Venue is proper in this District under 28 U.S.C. § 1441(a) because the state court

where the suit was filed is located in this District. However, since the related pending bankruptcy

actions is pending in the Bankruptcy Court for the Southern District of Texas, it is proper for the

Court to change the venue of this action to the Bankruptcy Court for the Southern District of

Texas. A motion for the change in venue will be filed shortly.

**The Removed Actionterry**

5.      In the removed case, Plaintiffs and Intervenors claim ownership and control of

Digerati Technologies, Inc. ("Debtor") and its subsidiaries.  The Plaintiffs and

Intervenors also claim control and ownership of entities with substantial contracts

with Debtor, which directly impact Debtor's assets.  These same issues are presented

in several other cases pending in Harris County.

**Relation of the Removed Action to the Bankruptcy Case**

6.      Digerati Technologies, Inc. ("Debtor") filed a voluntary chapter 11 petition on

May 30, 2013, commencing a reorganization case (the "Chapter 11 case") which is pending

before the United States Bankruptcy Court for the Southern District of Texas. The Chapter 11

case is designated as Case No. 13-33264.  The Debtor is a debtor in possession pursuant to11

U.S.C. §§ 1101, 1107 and 1108.

2

7.      At the time of the commencement of the Chapter 11 case, the State Court Action was still pending before the State Court.

8.      All such claims and causes of actions in the State Court Action have a clear and direct impact on interests and property of the estate under 11 U.S.C. § 541. Resolution of the claims asserted in the State Court Action will significantly affect the administration of the estate and the equity security holder relationship. All such proceedings are core proceeding under 28 U.S.C. § 157. In the event that any claim or cause of action asserted in the State Court Action is determined to be non-core, MCI consents to the entry of final orders or judgments by the bankruptcy judge.

9.      This Notice of Removal is timely as it is filed less than ninety (90) days after the order for relief in the Chapter 11 case. As mentioned above, the State Court Action was pending when the Chapter 11 case was commenced. Removal of each claim and cause of action of the Civil Action to the Bankruptcy Court is authorized by 28 U.S.C. §§ 1452, and 1334.

**Bankruptcy Jurisdiction**

10.     Removal is proper pursuant to this Court's bankruptcy jurisdiction, as authorized by 28 U.S.C. § 1334(b), which provides that federal district courts have "original jurisdiction of all civil proceedings ... arising in or related to cases under title 11." Cases subject to such jurisdiction are removable under the authority of 28 U.S.C. § 1452, which states that "[a] party may remove any claim or cause of action ... to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title."

11.     The State Court Action "arises in" and/or "relates to" the Bankruptcy Case as the State Court Action is inextricably linked to the bankruptcy because it could result in findings or

3

rulings that affects the control and management of the debtor which is critical to the administration of the Debtor's estate, equity interests in the Debtor and could lead to inconsistent findings with the bankruptcy court. For these reasons, removal is proper.

12.     In the Fifth Circuit, if an action could "conceivably have any effect on the estate being administered in bankruptcy, the Bankruptcy Court has "related to" jurisdiction over the ction." Wood v. Wood (In re Wood), 825 F.2d 90, 93 (5th Cir. 1987). In the present case, the State Court Action could have an affect on the bankruptcy and, therefore, it is appropriate for this Court to exercise "related to" jurisdiction.

### Pleadings of State Court Action

13.     True and correct copies of process and pleadings filed in this action are filed herewith.

### Reservation

14.     No admission of fact, law or liability is intended by this Notice of Removal, and all defenses, motions, counterclaims, and pleas are expressly reserved.

NOW THEREFORE, all parties are hereby notified to proceed no further in the State Court Action styled as *Rhodes Holdings, LLC et al. v. Gorham et al.*; Cause No. 2013-CI-02253, pending in the 285th Judicial District Court of Bexar County, Texas and MCI Partners, LLC requests any other relief the Court deems just and equitable.

Respectfully Submitted,

CHRISTIAN, SMITH & JEWELL, L.L. P.

By: */s/ Stephen R. Smith_____ /*
           Stephen R. Smith
           State Bar No. 18685540
           Gary M. Jewell
           State Bar No. 10664800

4

Stephen H. Cagle, Jr.
State Bar No. 24045596
2302 Fannin St., Suite 500
Houston, Texas 77002
Phone: (713)659-7617
Fax: (713) 659·7641

GARDNER LAW, P.C.

By: */s/ Jay K. Farwell* _____ /
Jay K. Farwell
State Bar No. 00784038
745 E. Mulberry Ave., Suite 500
San Antonio, Texas 78212
Phone: (210)733-8191
Fax: (210) 733-5538

**ATTORNEYS FOR TERRY DUNKEN, JR.
AND MCI PARTNERS, LLC**

## CERTIFICATE OF SERVICE

This is to certify that on May 31, 2013, a true and correct copy of the foregoing document was served in accordance with Federal Rules of Civil Procedure upon:

Lloyd E. Kelley
The Kelley Law Firm
2726 Bissonnet, Suite 240, PMB 12
Houston, Texas 77005

By: _*/s/ Stephen R. Smith*_ _ ____
Stephen R. Smith

*Rhodes Holdings, LLC et al. v. Gorham et al.*; Cause No. 2013-CI-02253 in the 285th Judicial District Court of Bexar County, Texas

## Plaintiffs:
Rhodes Holdings, LLC;
Recap Marketing & Consulting, LLP;
WEM Equity Capital Investment, Ltd;
Robert C. Rhodes;
Delta S Ventures LP;
Hunter M.A. Carr;
William McIlwain;
Scott Hepford (Intervenor);
Lunaria Heritage Trust (Intervenor)


Counsel:

Lloyd E. Kelley
Lloyd E. Kelley & Associates
2726 Bissonnet, Suite 204, PMB 12
Houston, TX 77005
Telephone: 281-492-7766
Facsimile:  281-652-5973
kelley@lloydekelley.com


Darryl Spiller
2726 Bissonnet, Suite 204, PMB 12
Houston, TX 77005
Telephone:  281-492-7766
Facsimile:   281-652-5973
spillerlegal@hotmail.com

Arcelia Trevino
The Law Office of Arcelia Trevino
The Milam Building
115 E. Travis, Suite 526
San Antonio, Texas 78205

George W. Gore
The Gore Law Firm
6200 Savoy, Suite 1150
Houston, TX 77036
Telephone:  713-224-2000
Facsimile:   713-224-2004
ggore@thegorelawfirm.com

## Defendants:

David Gorham (filed special appearance)
MCI Partners LLC
Terry Dunken
Lou Soumas (has not appeared)
Rainmaker Trust
Southpaw Trust
Gary Haak
Sheryl "Sherri" Dunken


Counsel:                              James Wesley Christian –jchristian@csj-law.com
                                      Stephen Ray Smith – ssmith@csj-law.com
                                      Gary M. Jewell – gjewell@csj-law.com
                                      Stephen H. Cagle, Jr. – scagle@csj-law.com
                                      Christian, Smith & Jewell, LLP
                                      2302 Fannin St., Suite 500
                                      Houston, Texas 77002
                                      Phone: (713) 659-7617
                                      Fax:  (713) 659-7641

                                      Jay K. Farwell
                                      Gardner Law P.C.
                                      745 E. Mulberry Ave., Suite 500
                                      San Antonio, TX 78212
                                      Tel. (210) 733-8191
                                      Fax (210) 733-5538

PRIVATE PROCESS

"The State of Texas"                NO. ___2013-CI-02253___

2013CI02253 -S00009

RHODES HOLDINGS LLC ET AL _____
**Plaintiff**
vs.

DAVID L GORHAM ET AL _____
**Defendant**
( Note: Attached Document May Contain Additional Litigants. )

**IN THE DISTRICT COURT**

<u>285th</u> **JUDICIAL DISTRICT**

**BEXAR COUNTY, TEXAS**

**NOTICE**

**Citation** Directed to:  ANTONIO ESTRADA

"You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you." Said petition was filed on the <u>12th</u> day of <u>February</u>, <u>2013</u>.

ISSUED UNDER MY HAND AND SEAL OF SAID COURT ON THIS <u>13th</u> DAY OF <u>February</u> A.D., <u>2013</u>.

PLAINTIFF'S ORIGINAL PETITION
APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY AND
PERMANENT INJUNCTION AND REQUEST FOR DISCLOSURE

**DONNA KAY MCKINNEY**
**District Clerk of Bexar County, Texas**

LLOYD E KELLEY _____
**Attorney/**PLAINTIFF
**address** 2726 BISSONNET ST 240
HOUSTON, TX 77005-1319

By:_____ Deputy
MARC GARCIA

---

OFFICER'S RETURN

Came to hand _____ day of _____, A.D. _____, at _____ o'clock _____.M. and executed (not executed) the _____ day of _____, A.D. _____, in _____ at _____ o'clock _____.M. by delivering to _____ in person a true copy of this citation together with the accompanying copy of plaintiff's petition. Served at _____
Cause of failure to execute this citation _____
I traveled _____ miles in the execution of this citation. Fees: _____ Serving citation $ _____ Mileage _____ Total $ _____
Badge/PPS #_____         _____
                               _____ County, Texas
The State of Texas             By _____

NON - PEACE OFFICER VERIFICATION
VERIFICATION OF RETURN (IF NOT SERVED BY PEACE OFFICER)
SWORN TO this _____ day of _____, _____

_____
NOTARY PUBLIC, STATE OF TEXAS

**EXHIBIT**
**1**

ORIGINAL
(DK002)

2013-CI-02253

285TH JUDICIAL DISTRICT COURT

RHODES HOLDINGS LLC ET AL  VS DAVID L GO

DATE FILED: 02/12/2013

| | | |
|---|---|---|
| **RHODES HOLDINGS, LLC** | § | **IN THE DISTRICT COURT** |
| **RECAP MARKETING &** | § | |
| **CONSULTING LLP** | § | |
| **WEM EQUITY CAPTIAL** | § | |
| **INVESTMENTS, LTD** | § | |
| **ROBERT C. RHODES,** | § | |
| **DELTA S VENTURES LP,** | § | |
| **HUNTER M.A. CARR &** | § | |
| **WILLIAM MCILWAIN** | § | |
| **Plaintiffs,** | § | |
| | § | **JURY TRIAL REQUESTED** |
| **vs.** | § | |
| **DAVID L. GORHAM** | § | |
| **MCI PARTNERS, LLC** | § | **BEXAR COUNTY, TEXAS** |
| **ARTHUR L. SMITH** | § | |
| **ANTONIO ESTRADA** | § | |
| **MURRAY R. NYE** | § | |
| **JOHN R. FLEMING &** | § | |
| **BERT TERRY DUNKEN JR** | § | |
| **LOU SOUMAS** | § | |
| **Defendants.** | § | **____JUDICIAL DISTRICT** |

## PLAINTIFF'S ORGINAL PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY AND PERMANENT INJUNCTION AND REQUEST FOR DISCLOSURE

1.     Plaintiffs, Rhodes Holdings, LLC, Recap Marketing & Consulting LLP, Delta S

Ventures LP, Hunter M.A. Carr, Robert C. Rhodes, WEM Equity Capital Investments,

Ltd., and William McIlwain files this Original Petition and Application for Temporary

Restraining Order and Temporary and Permanent Injunction ("Petition") against

Defendants David L. Gorham, MCI Partners, LLC, Arthur L. Smith, John R. Fleming,

Antonio Estrada, Murray R. Nye, Bert Terry Dunken Jr, Lou Soumas.

1

**DISCOVERY**

2.      Plaintiffs intend to conduct discovery under Level 3 of the Texas Rules of Civil Procedure 190.4.


**PARTIES**

3.      Plaintiff RHODES HOLDINGS, LLC is a Texas limited liability company.

4.      Plaintiff ROBERT C. RHODES is a resident of Texas.

5.      Plaintiff RECAP MARKETING & CONSULTING LLP is a Texas Limited Liability Partnership.

6.      Plaintiff DELTA S VENTURES LP is a Texas Limited Partnership.

7.      Plaintiff HUNTER M. A. CARR is a resident of Texas.

8.      Plaintiff WEM EQUITY CAPITAL INVESTMENTS, LTD. is a Texas Limited Partnership.

9.      Plaintiff WILLIAM MCILWAIN is a resident of Texas.

10.     Defendant DAVID L. GORHAM may be served with citation at the following address: 1778 Morning Glory Lane, Pocatello, Idaho, 83201-1960 or wherever he may be located.

11.     Defendant MCI PARTNERS, LLC is a Delaware Limited Liability Company whose registered agent is Harvard Business Services, Inc. and may be served with citation at the following address: 16192 Coastal Way, Lewes, DE 19958.

12.     Defendant ARTHUR L. SMITH is a resident of Bexar County, Texas and may be served with citation at the following address: 8023 Hermosa Hill, San Antonio Texas

2

78256 or at 3201 Cherry Ridge Suite C-300, San Antonio Texas 78230 or wherever he may be located.

13.     Defendant ANTONIO ESTRADA is a resident of Bexar County, Texas and may be served with citation at the following address: 1807 Deer Ridge St. San Antonio, Texas 78232 or at 3201 Cherry Ridge Suite C-300, San Antonio Texas 78230 or at 3463 Magic Drive, Suite 202, San Antonio Texas 78229 or wherever he may be located.

14.     Defendant MURRAY R. NYE may be served with citation at the following address: 3201 Cherry Ridge Suite C-300, San Antonio Texas 78230 or wherever he may be located.

15.     Defendant JOHN R. FLEMING is a resident of Texas and may be served with citation at the following address: 5407 Cuesta Verde, Austin Texas 78746 or wherever he me be located.

16.     Defendant BERT TERRY DUNKEN JR. may be served with citation at the following address: 2203 Greenhaven Dr., Sugarland, Texas 77479 or at 12603 Southwest Freeway, Suite 170, Stafford, Texas 77477 or wherever he may be located.

17.     Defendant LOU SOUMAS may be served with citation at the following address: 12603 Southwest Freeway, Suite 170, Stafford, Texas 77477 or wherever he may be located.

### JURISDICTION AND VENUE

18.     This Court has jurisdiction over this matter because the amount in controversy is within the jurisdictional limits of this Court, and because Plaintiffs seek writs of

3

injunction.   Venue is proper in this Court under Section 15.002(a)(l) of the TEXAS CIVIL PRACTICE AND REMEDIES CODE because all or a substantial part of the events or omissions giving rise to the claims occurred in Bexar County, Texas. Venue is also proper in this Court under Sections 15.002(a)(2) & (3) and 15.005 of the TEXAS CIVIL PRACTICE AND REMEDIES CODE because one or more Defendants are residents of Bexar County, Texas.

## FACTS

19.     David L. Gorham ("Gorham"), acting through and in concert with Bert "Terry" Dunken ("Dunken") and Arthur L. Smith ("Smith"), is breaking federal and state securities law by acting as a control person for a publicly traded company.  Dave Gorham has tried to be an undisclosed control person over a public company but has intentionally remained invisible in SEC filings although he has controls the deal.  It is unlawful for Gorham to be a control person over a public company and not be disclosed as such.  Such action places the company and its officers and directors at risk of sanctions and possible prosecution by the SEC.

20.     Mark Townsend and Scott Hepford contacted Hunter M. A. Carr ("Carr") of Recap Marketing and Consulting, LLP ("Recap") about buying out Dishon Disposal, Inc. ("Dishon").  Dishon and another company, Hurley Enterprises, Inc. ("Hurley"), were companies located in North Dakota that were growing rapidly as a result of the Bakken North Dakota oil field development.  The representative of Dishon was **David Gorham**. Instead of Dishon being bought out, Gorham decided the Dishon and Hurley companies would be combined and that the two companies would be taken public in a reverse-merger in which the two companies would be acquired by a publicly traded company.

4

21.     Robert C. Rhodes ("Rhodes") was brought in to facilitate in taking the companies public and to help them raise capital.   In several meetings with Gorham, Gorham made material misrepresentations to Carr and Rhodes about the transaction.   First, Gorham stated he had formerly been CFO of the New York Times newspapers and that overseen an $18 billion company.   Gorham represented he had overseen $64 billion of dollars of funding for green energy projects.   However, Gorham stated he did not want his name involved in the transaction with Dishon and Hurley because it involved oil and gas energy and that he didn't wanted to be associated with such "dirty" energy.   Gorham stated he had been involved in "green technology" and this would taint his reputation to be associated with traditional oil and gas drilling operations.   Later, Plaintiffs discovered the real reason Gorham wanted to hide his involvement.   Gorham attempted to take profits out of the transaction and control the company as an undisclosed principal.

22.     Gorham stated that his company, MCI Partners, LLC ("MCI") was buying Dishon and Hurley for $19 million each for a total price of $38 million.   Gorham informed Carr and Rhodes as well as others that Dishon and Hurley did not want to wait to get their money as would be required under an IPO and they did not want to have their money used as the sole source for buying out their own companies.   Thus, the strategy that Gorham wanted to effect the transaction is commonly referred to as a "reverse merger."   Carr, as a part of his consulting, put together MCI, with Digerati Technologies, Inc., ("Digerati") a Nevada Corporation with its headquarters in San Antonio, Texas.

23.     As per Digerati's latest filed 10Q, Digerati, by its own admission as of October 31, 2012, reported "substantial doubt about Digerati's ability to continue as a going concern."   *See* Digerati's October 31, 2012 10Q on file with the SEC.   Digerati reported

that it had net losses of $77 million with a working capital deficit of $2 million. Digerati's CEO was Arthur L. Smith and its CFO was Antonio Estrada ("Estrada"), both of whom live in San Antonio, Texas. Digerati's management reported that as of October 31, 2012, "management believes that current resources available will not be sufficient to fund the Company's operations over the next 12 months." *See* Digerati's October 31, 2012 10Q on file with the SEC. As reported by Smith, just prior to the merger the original Digerati, as a publicly traded company, had a market value of less than $300,000.

24.     Rhodes had been contractually engaged by MCI to find a public entity vehicle for the transaction in which to move MCI's clients, Dishon and Hurley. Digerati had a prior consulting relationship with Carr. Rhodes and Carr offered to recommend Digerati as the right candidate for the Dishon and Hurley transaction if Smith would commit to certain actions. Carr and Rhodes explained to Smith that a merger of Digerati with Dishon and Hurley might help his company survive.

25.     According to Smith, Digerati had been established in 1994. But according to Digerati's public filings, it had seen better days and was now on the verge of not being able to meet its ongoing obligations. However, because Digerati's stock has been registered and publicly traded since 1994, as represented by Smith, Digerati was one of several candidates that would meet the requirements of Gorham's "reverse merger" for the Dishon and Hurley buy out by MCI Partners.

26.     As part of the proposed deal that Rhodes and Carr designed and provided the strategy for the overall deal structure, Digerati would buy out Dishon and Hurley with stock and a note. Dishon and Hurley would get a note for $38 million or $19 million each. The original Digerati under Smith would be moved into a subsidiary called Shift 8

6

Technologies, Inc. ("Shift 8") in which Smith would be Chairman and CEO. Art Smith would relinquish all officer positions in the parent company, Digerati and for a time would remain as a Board of Digerati. The plan was that over time Shift 8 would eventually be spun off from Digerati where it would be independent. New board of director members were to be placed on the newly constituted Board of Digerati as well as all new officers. Most importantly, Smith committed to moving all of the current debt of Digerati to Shift 8 so that the resulting Digerati would be debt free. As a result of the transaction, Smith's company got a loan of $170,000 which was paid by Rhodes Holdings, LLC. Shift 8 also received 5% of the shares of the newly formed Digerati. This transaction as structured would result in virtually saving Smith's operations from insolvency and provide the medium for Dishon and Hurley to be taken public along the guidelines proscribed by Gorham.

27.     Transactions documents were executed and Digerati hired SEC counsel to consummate the deal. Gorham and Dunken, an attorney engaged by Gorham, insisted that the transaction had to close in calendar year 2012 because they were putting all of the Dishon and Hurley capital gains into tax shelters to avoid paying what they described as the Obama tax increases that they claimed were coming in 2013. As described by Terry Dunken, the Dunken tax shelter scheme that he was designing was based upon giving all of the capital gains to a charity and then buying a life insurance policy for the charity's executive and then keeping control over the money and making the profits off the money, until the charity's executive dies. Dunken claimed this tax shelter was legal but he said the transaction had to close before the end of the year because there a possibility Obama might end this "golden goose." After long hours and great effort, Carr and Rhodes as well

7

as the other members of the deal team were able to get the transaction to close on November 26, 2012.

28.     On November 26, 2012, as planned, Digerati merged with a company called Waste Deep, Inc.  Gorham and Dunken represented that Waste Deep owned 100% of the capital stock of Dishon and Hurley.  Gorham and Dunken represented that he principal shareholder of Waste Deep was Oleum Capital, LLC.  The merger transaction was arranged for the purpose of moving Waste Deep into a publicly-traded company so that Waste Deep on behalf of Dishon and Hurley and any newly created operating subsidiaries would have access to public market capital through American Equity Fund, LLC.

29.     It was always represented that the transaction was structured for a purchase price of $38 million.  However, after the closing Carr and Rhodes discovered that Gorham and Dunken had changed the purchase price to $60 million.  This meant the entire deal structure had been altered.  When Carr and Rhodes tried to discuss this issue, they were met with silence and no one was willing to explain why the price changed or who was getting the additional $22 million.  Carr and Rhodes became suspicious that Gorham had put his own interest ahead of the Dishon and Hurley companies and that Gorham himself was attempting to take the additional $22 million for himself or his trust.  The 60% increase in the price of the deal now made the deal more difficult to price in the market and substantially more difficult to find the capital that the new venture needed to meet the capital expectations of the Dishon and Hurley companies.

30.     Then, in a curious turn of events, upon the closing of the transaction, Smith and Estrada had affirmatively represented that they had moved the debt that the original Digerati owed into Shift 8.  Smith affirmatively represented to Carr, Rhodes and William

McIlwain ("McIlwain") that the debt had been moved such that Digerati was debt and liability free. This was a lie. In fact, it was later discovered that Digerati had over two million dollars in debts and other liabilities remaining as obligations of the company at and after the closing that could not be spun off.

31.    After the transaction closed on November 26, 2012, all of a sudden, David Gorham and Dunken stopped returning phone calls and ceased providing information to Carr, McIlwain and Rhodes. Upon discovery of Smith's deceptive act of not moving the debt into Shift 8 as promised and represented, Carr proposed several strategies to resolve the issue. However, no one would respond.

32.    Then, on December 23rd, Gorham and Dunken in concert with Smith and Estrada came up with a plan to oust Carr and Rhodes. Instead of moving forward with the SEC filings necessary to complete the public filing requirements, Smith, Gorham and Dunken, acting in concert, moved to oust the new board of Digerati and to replace them with only Smith. Then, Gorham and Dunken moved to replace all of the officers of Digerati with Smith, himself. Without holding a shareholder meeting, Dunken, Gorham and Smith simply announce Digerati's board members Kelley V. Kirker and McIlwain, were removed. John Howell, the CEO of Digerati after the closing resigned. Then, without holding a board of directors meeting, Art Smith, claiming to be the sole board member, in concert with Dunken and Gorham, simply announced he was now Chairman, President and CEO of the new Digerati. Then, they attempted to blame Carr and Rhodes for Smith's refusal and outright lying about moving the debt of Digerati to Shift 8.

33.    John Howell, the new CEO of Digerati, informed Rhodes and Carr and McIlwain that they were moving the assets out of Digerati and thus the deal was dead meaning that

Carr, Rhodes and McIlwain would simply lose the entire value of the stock they had received in the transaction.

34.     McIlwain was concerned as a Director, Investor and Stockholder that all shareholders would lose all of their investment in Digerati.

35.     On December 28, 2012, Smith in concert with Dunken and Gorham purported to fire Digerati's SEC legal counsel, Robert Sonfield. Upon information and belief, Gorham and Dunken are attempting to find a new company to spin the Dishon and Hurley companies into so that they do not have to pay Rhodes and Carr for their strategy but at the same time keep Dishon and Hurley committed to Gorham's purchase agreement.

36.     To keep the transaction on track protect the corporation and shareholders, McIlwain and Kirker called a board meeting. Smith declined to attend. At the board meeting, the board elected Rhodes to replace the previous board member that had resigned. Rhodes was then elected as CEO of Digerati and was told to proceed with the SEC required filings.

37.     Then, Smith, Gorham and Dunken became making false and defamatory statements about Rhodes and Carr. Smith, Gorham and Dunken began accusing Carr and Rhodes of theft and other acts of dishonesty.

38.     After Smith, Gorham and Dunken began to attack and slander Rhodes and Carr, it was revealed that Gorham was not the "choir boy" he claimed to be. Gorham was previously convicted of felony grand theft in Florida. Gorham stole $100,000 from a woman he worked with and after his arrest, Gorham eventually pled guilty to the felony charge. In addition, Gorham had two misdemeanor convictions for theft by check or worthless check.

## CAUSES OF ACTION

**Fraud**

39.     Plaintiffs incorporates the foregoing paragraphs as if fully set forth herein.

40.     As set out above, Defendants have committed fraud. The Defendants made misrepresentations to Plaintiffs, including but not limited to, that the purchase price/transaction size was going to be $38 million. That the debt would and actually was moved from Digerati to Shift 8. That Gorham was the New York Times CFO and had completed billions of projects and was familiar with the process of taking a company public. That Plaintiffs were to be provided common stock after the transactions closed. That Plaintiffs were to be provided warrants for common stock after the closing. That the market cap would be over $300 million resulting in at least $5.00 common share price. Plaintiffs relied upon these representations and arranged a viable merger. Those representations were false. Defendants had no intention of honoring their promises. Defendants did not move the debt to Shift 8 and did not give the stock to Plaintiffs and did not create the value as represented. Defendants' misrepresentations were material. Defendants knew the representations were false or, at the very least, they made the misrepresentations as positive assertions without knowledge of their truth. Defendants made the misrepresentations with the intention that Plaintiffs rely on them and Plaintiffs reasonably relied on the representations to its detriment. The misrepresentations proximately caused injury and damages to Plaintiffs.

**Fraudulent Inducement**

41.     Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

11

42.  As set out above, Defendants made numerous fraudulent misrepresentations, including those set forth in the preceding cause of action, and false promises of performance with no actual intent to perform.  Plaintiffs entered into one or more contracts in reliance upon those misrepresentations and Plaintiffs suffered injury and damages as a result. Accordingly, Defendants have committed fraud in the inducement.

**Cause of Action - Statutory Fraud**

43.  Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

44.  The transaction at the heart·of this case involved stock. As set out above, Defendants made numerous false representations of fact and false promises during the transaction. Each Defendant also benefited by not disclosing that the others' representations and promises were false. Defendants did so to induce Plaintiffs to enter into contracts and perform services that Plaintiffs reasonably relied on the misrepresentations in entering into contracts. Plaintiffs suffered injury and damages as a result of Defendants' statutory fraud.

**Breach of Fiduciary Duty**

45.  Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

46.  As set out above, Defendant Smith was the Chairman, CEO of Digerati and Estrada was its CFO before the merger.  Plaintiff McIlwain was a stock holder in Digerati before and after the merger.  Smith and Estrada owed McIlwain a fiduciary duty. Smith and Estrada owed duties of loyalty and utmost good faith, candor, full disclosure, to refrain from self dealing, fair and honest dealing, and the duty to act with integrity of the strictest kind. As set out above, Defendants have brazenly and repeatedly breached each of those duties. Defendants' breach of those duties has injured McIlwain and benefited the

Defendants. Gorham and Dunken acted in concert with Smith to breach the fiduciary duties owed by Smith and Estrada.

**Participation in Breach of Fiduciary Duty**

47.      Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

48.      Each of the Defendants knowing participated in breaches of fiduciary duty by the other Defendants. Accordingly, each Defendant is liable for all of the breaches of the· others.

**Libel/Slander**

49.      Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

50.      Defendants have slandered Rhodes and Carr. Defendants made false statements, including that Robert Rhodes had stolen property belonging to Digerati and that he was not properly elected Chief Executive Officer and director and that William McIlwain was not elected Chairman of the Board of Directors and Corporate Secretary. Defendants accused Carr of stealing as well. Defendants' statements were defamatory, and they were false. Defendants were acting with malice (or at the very least extreme negligence). The statements proximately caused Plaintiffs to suffer injury and damages.

**Business Disparagement**

51.      Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

52.      As set out above, Defendants made disparaging statements. At least some of those statements related to Plaintiff's economic interests. The statements were false and Defendants published them with malice and without any privilege to do so. The statements caused Plaintiffs to suffer special damages. Accordingly, Defendants are liable for business disparagement.

13

**Texas Securities Act Violations**

53.     Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

54.     Defendants made false statements regarding the securities of Digerati and sold or offered to sell to Plaintiffs securities by means of untrue statements of material fact and/or omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, causing damages to Plaintiffs. Additionally and/or alternatively, Defendants directly or indirectly controlled buyers of the securities and/or materially aided the buyers with intent to deceive or defraud or with reckless disregard for the truth or the law. Therefore, Defendants are jointly and severally liable for rescission and/or damages as provided by the Texas Securities Act.

**Conspiracy**

55.     Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

56.     Defendants conspired against Plaintiffs  Digerati to, *inter alia,* unlawfully gain control of Plaintiffs stock and ownership of the new Digerati. Each of the Defendants was a member of a combination of two or more persons. The object of the combination was to accomplish an unlawful purpose (or, at the very least a lawful purpose by unlawful means). The Defendants had a meeting of the minds on the object of the course of action and at least one of the Defendants committed an unlawful over act to further the object or course of action.  Plaintiffs  suffered injury as a result of Defendants' wrongful acts.

**Aiding and Abetting**

57.     Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

14

58.   Each of the Defendants is liable for the wrongful conduct of the others because each Defendant aided and abetted the others. As set out above, each Defendant breached a legal duty and personally participated in the wrongful conduct or assisted another in a substantial way, causing injury to Plaintiffs. Alternatively, each Defendant knew of the goal of the wrongful conduct of another and personally encouraged or assisted in a substantial way causing injury to Plaintiffs.

## APPLICATION FOR TEMPORARY RESTRAINING ORDER

59.   Plaintiffs pray the Court issue a temporary restraining order enjoining Defendants and all persons and entities acting in concert with them from:

a)  Moving any of the assets of Digerati out of the company or executing any documents that would move or transfer the assets out of Digerati.

b)  Taking any action or making any statements to the effect that any of them are authorized to move any assets or alter any assets relating to or belonging to Digerati or any of its affiliates or subsidiaries;

c)  Manipulating the price of any securities of Digerati;

d)  Accessing, changing the password on, or making any other changes to any bank or commercial account in the name of or used for the benefit of Digerati or any of its affiliates or subsidiaries, whether those accounts are online or otherwise, or to any online accounts relating to or owned by Digerati Technologies, Inc. or any of its affiliates or subsidiaries;

e)  Filing any documents with any state or federal agency, self-regulatory organization, authority, regulatory body or other entity, including the Securities and Exchange Commission, any securities exchange, any transfer agent, any

secretary of state, and any bank, purporting to be on behalf of Digerati or any of its affiliates or subsidiaries;

f) Making any SEC statements purporting to be on behalf of Digerati or any of its affiliates or subsidiaries including Dishon Disposal, Inc., Hurley Enterprises, Inc., Oleum Capital LLC or MCI Partners, LLC.

g) Assessing, changing the password on, or making any other changes to any website of Digerati Technologies, Inc. or any of its affiliates or subsidiaries including Dishon Disposal, Inc., Hurley Enterprises, Inc., Oleum Capital LLC or MCI Partners, LLC.

h) Taking any other action designed to impair Digerati Technologies, Inc.'s ability to conduct its business.

i) Destroying, altering, secreting, or disposing of any documents or electronic data or medium with any information or communication pertaining to Digerati Technologies, or Dishon Disposal, Inc., Hurley Enterprises, Inc., Oleum Capital LLC or MCI Partners, LLC.

60.    It is probable that Plaintiffs will recover from Defendants after a trial on the merits for the reasons set forth above. In particular, Plaintiffs will recover because Defendants have committed fraud, statutory fraud and violations of the Texas Securities Act as well as libeled and slandered Plaintiffs. Defendants have no colorable claim to the contrary, and their campaign of interference, libel, conversion, and sabotage is unlawful and otherwise tortious.

61.    If Plaintiffs application is not granted, harm is imminent. Defendants' attempt to scuttle the transaction and move the assets and otherwise making fraudulent and unlawful

attacks against Plaintiffs' ownership interest in Digerati and its subsidiaries impairs the existence and ability of the company to exist. The harm that will result if the temporary restraining order is not issued is irreparable. As a small, publicly-traded company, it is essential that Digerati display as much credibility, competence, and certainty as it can. The destructive conduct of Plaintiffs in trying to move the assets from Digerati to another entity and the interference with the filing and publication of required SEC filings creates confusion in the marketplace and damages Digerati's credibility and reputation. Defendants' actions increase uncertainty that will depress Digerati's stock price and make it more difficult for Digerati to access equity capital, borrow money, or obtain commercial credit. Their actions also create unnecessary difficulties in dealing with the Securities and Exchange Commission, the Nevada Secretary of State, and other governmental and regulatory bodies. Defendants campaign has already damaged Digerati in ways that are severe, difficult to quantify, and likely impossible to ever fully repair.

62.    Plaintiffs have no adequate remedy at law because the Defendants are continuing to inflict damages on Digerati and are attempting to move the companies assets which are not measurable by any certain pecuniary standard, and no amount of money damages-- even if Defendants could pay them-could undo the harm the Defendants have made clear they will continue inflicting.

63.    Plaintiffs are willing to post bond. Plaintiffs ask that the bond amount be nominal, however, because the relief sought would not cause any financial harm to Defendants. Defendants have control of all of Digerati's assets and income.

64.    There is not enough time to serve notice on Defendants and to hold a hearing on this application, because Plaintiffs need for relief is immediate and Defendants have

indicated they are in the process of denuiding the company of its assets. Moreover, Defendants' conduct to date has established good cause to believe that Defendants, if given notice of this hearing, will rush to cause as much additional harm and move as many assets as possible before the Court can enjoin their unlawful conduct

## REQUEST FOR TEMPORARY INJUNCTION

65.     Plaintiffs ask the court to set its application for temporary injunction for a hearing and, after the hearing, issue a temporary injunction against Defendants.

66.     Plaintiffs have joined all indispensable parties they are aware of under Texas Rule of Civil Procedure 39.

## REQUEST FOR PERMANENT INJUNCTION

67.     Plaintiffs ask the Court to set its request for a permanent injunction for a full trial on the merits and, after the trial, issues a permanent injunction against Defendants.

## JURY DEMAND

68.     Plaintiffs demand a jury trial and tenders the appropriate fee with this Petition.

## CONDITIONS PRECEDENT

69.     All conditions precedent to Plaintiff's claim for relief have been performed or have occurred.

## REQUEST FOR DISCLOSURE

70.     Under Texas Rule of Civil Procedure 194, Plaintiff request that Defendants disclose within 50 days of the service of this request, or at an earlier time as ordered by the Court, the information or material described in Rule 194.2.

## PRAYER

For these reasons, Plaintiffs ask that Defendants be cited to appear and answer and, on final trial, that Plaintiffs be awarded a judgment against Defendants for the following:

a. Temporary and permanent injunctive relief;

b. Damages;

c. Exemplary and punitive damages;

d. Prejudgment interest;

e. Post-judgment interest;

f. Declaratory judgment of the rights and authority of the parties to speak for and act on behalf of Plaintiffs;

g. Attorneys' fees and expenses;

h. Costs of court; and

i. Such other relief as the court may find just.

Respectfully submitted,

**THE LAW OFFICE OF ARCELIA TREVINO**

By: _____
**ARCELIA TREVINO**
State Bar No. 24043964
The Milam Building
115 E. Travis Suite 526
San Antonio, Texas 78205
Telephone: 210-626-8649
Telecopier: 210-226-8649

**THE GORE LAW FIRM, P.C.**

By:_/s/ George Gore__ _____
George W. Gore
State Bar No. 24029582
6200 Savoy, Suite 1150
Houston, Texas 77036

19

(713) 224-2000 Telephone
(713) 224-2004 Facsimile

**THE KELLEY LAW FIRM**
By: _/s/ Lloyd Kelley _ _____
**Lloyd E. Kelley**
State Bar No. 11203180
2726 Bissonnet Ste 240 PMB 12
Houston, Texas 77005
Telephone: 281-492-7766
Telecopier: 281-652-5973

## DECLARATION OF WILLIAM McILWAIN

BEFORE ME, the undersigned authority, personally appeared William McIlwain known to me and who being duly sworn on his oath stated:

1.       My name is William McIlwain and I am over 18 years of age, of sound mind, and capable of making this affidavit.

2.       The statements herein are true and correct and based upon my personal knowledge.

3.       I own stock in Digerati Technologies, Inc. ("Digerati") through WEM Equity Capital Investments, Ltd.  Long before there was any discussion of a merger of Digerati with Dishon Disposal, Inc. or Hurley Enterprises, Inc., I through WEM Equity Capital Investments, Ltd. invested money into Digerati.  I through WEM Equity Capital Investments, Ltd. invested $100,000 in Digerati in 2010.  Since that time, WEM Equity Capital Investments, Ltd. has held stock in Digerati, a publicly traded company.

4.       Art Smith and Antonio Estrada made representations to me and others before the merger of Digerati on November 26, 2012 that all of the debt of Digerati would be moved to Shift 8, Inc.  Art Smith and Antonio Estrada represented just prior to and after the transaction that the debt had in fact been moved to Shift 8, Inc.  It was later discovered that Art Smith and Antonio Estrada had lied and that the debt of Digerati had in fact not been moved to Shift 8, Inc.

5.       After the merger on November 26, 2012, John Howell, the new CEO of Digerati informed me that "the Digerati deal was doomed and my departure had nothing to do with that" and that "Digerati will be of little value as none of the oil assets remain." If this happens,

Digerati will be denuded of all of its assets and will have no value such that all share holders except the Defendants all of the value in the company. WEM Equity Capital Investments, Ltd.'s substantial investment in Digerati will be worthless. Given the volatile state of the market for Digerati securities, it may be impossible to give a precise value of the loss WEM Equity Capital Investments, Ltd. would incur if David Gorham, Terry Dunken and Art Smith are permitted to denude Digerati of its primary assets.

6.      I was elected to Digerati's board of directors. In December 2012, David Gorham, Terry Dunken and Art Smith attempted unlawfully to have me removed as a director. This action was taken by them to further their attempt to denude Digerati of its assets.

7.      At no point during this transaction did I know that David Gorham had a previous felony conviction for grand theft.

JURAT

My name is William McIlwain. My address is 3111 Rosemary Park Lane, Houston, Texas 77082.

I declare under penalty of perjury that the foregoing is true and correct. Executed in Fort Bend County in the State of Texas, on this 12th day of February 2013.

_____
William McIlwain

## AFFIDAVIT OF HUNTER M. A. CARR

STATE OF TEXAS                          §

                                        §

COUNTY OF FORT BEND    §


BEFORE ME, the undersigned authority, personally appeared Hunter M. A. Carr, known to me and who being duly sworn on his oath stated:

1. My name is Hunter Carr and I am over 18 years of age, of sound mind, and capable of making this affidavit.

2. I am competent to testify to all matters in this affidavit on personal knowledge, and the matters are true and correct.

3. I have read Plaintiff's Original Petition and Application for Temporary Restraining Order and Temporary and Permanent Injunction and Request for Disclosure and all of the facts contained in the 'Facts" section are true and correct.


Hunter M. A. Carr


SUBSCRIBED AND SWORN TO, before me, this _12_ day of February, 2013.


Notary Public in and for
The State of Texas

KIMBERLY MARIE AYRES
My Commission Expires
August 2015

## AFFIDAVIT OF ROBERT C. RHODES

STATE OF TEXAS             §
                           §
COUNTY OF FORT BEND  §

BEFORE ME, the undersigned authority, personally appeared Robert C. Rhodes, known to me and who being duly sworn on his oath stated:

1.      My name is Robert C. Rhodes and I am over 18 years of age, of sound mind, and capable of making this affidavit.

2.      I was engaged by MCI Partners to facilitate a client going public.   I acted as a consultant in putting together a merger of Digerati Technologies, Inc. ("Digerati") and MCI Partners, LLC, Waste Deep, Inc. ("Waste Deep"), Oleum Capital, LLC, and the Dishon Disposal, Inc. ("Dishon") and Hurley Enterprises, Inc. ("Hurley") companies.   That transaction closed on November 26, 2012.

Prior to the transaction, David Gorham had represented to me that the transaction size was going to be $38 million, which meant we would have equity within the company to sell into the market to raise capital for the new Digerati that would emerge after the merger.

After the transaction closed, I discovered that the transaction purchase agreement that David Gorham had put into place was $60 million leaving no amount with which to raise equity in the market.

In addition, Arthur Smith and Digerati's CFO prior to the closing on November 26, 2012, Antonio Estrada, both represented and promised to me that they would move Digerati's existing

–1–

debt down to a subsidiary, Shift 8 Technologies, Inc. such that the remaining Digerati would be debt and liability free.

At the time of the transaction, Arthur Smith and Antonio Estrada represented to me that they had moved all of the debt and liabilities to Shift 8 Technologies, Inc. leaving Digerati debt and liability free. After the closing, it was discovered the debt had not in fact been moved to Shift 8 Technologies, Inc. and that the debt remained in Digerati. The representations Arthur Smith and Antonio Estrada made were material, false and they were relied upon by me to my detriment and the detriment of Delta S Ventures LP.

John Howell, the new CEO of Digerati after the merger, resigned just a few weeks after the merger. John Howell informed us that Digerati was dead because they were going to take all of the assets out of Digerati. This meant that all of the shares in Digerati that the Rhodes Holdings LLC had acquired would be worthless.

David Gorham and Terry Dunken began to execute a plan to denude Digerati of its newly acquired assets and to "unwind" the transaction by taking all of the assets of Digerati and placing them in a shell company. On December 23, 2012, David Gorham and Terry Dunken purported to take action to take Digerati away from its duly elected Board and place it under the sole control of Arthur Smith who was reporting to David Gorham and Terry Dunken.

I was never told that David Gorham had a felony conviction for grand theft in the state of Florida amongst other arresting convictions.

–2–

On January 16, 2013, a board of directors meeting was called at which time I was appointed to the Board of Directors and then made CEO of Digerati by the vote of the majority of the Board of Directors consisting of Mr. Kelley Kirker and Mr. Bill McIlwain.

If David Gorham, Terry Dunken and Arthur Smith are allowed to continue on the current course, I will lose all value in my Series A Preferred Stock because of John Howell's statement that all assets will be stripped from the company.

I have a security interest in the outstanding Digerati Series E Preferred Stock shares in the amount of $170,000.00. I never approved the transfer of those shares. The Defendants' actions impair my lien rights in that security.

9.    The Closing Memorandum was executed by Arthur Smith, Gary Haak, President of Waste Deep, Terry Dunken, Oleum Capital, LLC ("Oleum"), Hurley and Dishon.

10.    I was informed that on or about December 23, 2012, Oleum fraudulently purported to exercise its rights under the Series E Preferred Stock to terminate Mr. Kelley Kirker and Mr. William McIlwain as directors and the law firm of Sonfield & Sonfield, as corporate counsel and purported to elect Arthur Smith as Chief Executive Officer.

11.    On January 16, 2013, I was appointed CEO of Digerati and also appointed to the Board of Digerati. The board minutes properly reflect that I was so elected.

13.    Rhodes Holdings LLC owns 15,000 shares of Series A Preferred Stock shares of Digerati. If I am deprived or restrained from fulfilling my duties as CEO, shareholders including my company Rhodes Holdings LLC will suffer significant losses in value.

–3–

Personally, Rhodes Holdings LLC's damages due to the current ongoing conduct would exceed $7.5 million dollars.

15.     The Defendants have obstructed actions such that the Amended and Restated Articles of Incorporation have not and cannot be filed with the Secretary of State of Nevada because the Schedule 14C is not effective and has not been mailed to the shareholders as provided in the Agreement and Closing Memorandum and required by the Securities Exchange Act of 1934.

As the CEO of Digerati, it has become clear to me that Dave Gorham is acting as a control person for Digerati and Waist Deep.   Dave Gorham is an undisclosed control person over a public company but has remained invisible in SEC filings although he has controlled the deals.   It is unlawful for David Gorham to be a control person over a public company and not be disclosed as such.   Such action places the company and its officers and directors at risk of sanctions and possible prosecution by the SEC.

Robert C. Rhodes

SUBSCRIBED AND SWORN TO, before me, this 12 day of February, 2013.

Notary Public in and for
The State of Texas

KIMBERLY MARIE AYRES
My Commission Expires
August 15, 2015

–4–

PRIVATE PROCESS

Case Number: 2013-CI-02253

2013CI02253 S00010

**RHODES HOLDINGS LLC ET AL**
**VS.**
**DAVID L GORHAM ET AL**

IN THE DISTRICT COURT
285th JUDICIAL DISTRICT
BEXAR COUNTY, TEXAS

# TEMPORARY RESTRAINING ORDER
With Bond

"THE STATE OF TEXAS"
To: ANTONIO ESTRADA

Whereas, in a certain cause pending on the docket of the 285th Judicial District Court of Bexar County, Texas, being cause number 2013-CI-02253, wherein RHODES HOLDINGS LLC ET AL is Plaintiff and ANTONIO ESTRADA is Respondent. In said suit the Plaintiff has filed an Original Petition, asking among other things, for the granting and issuance of a Temporary Restraining Order, to restrain the Respondent, ANTONIO ESTRADA as fully set out and prayed for, a copy of which is attached hereto and to which reference is hereby made for the injunctive relief sought by the Plaintiff. Upon presentation and consideration of said petition, the Honorable OLIN B. STRAUSS has entered the following, to-wit: copy of order attached to writ served, and whereas, bond (if required) has been filed and approved;

These are therefore, to RESTRAIN, and you the said Respondent, ANTONIO ESTRADA , are hereby RESTRAINED as fully set out in the Temporary Restraining Order, a copy of which is attached hereto, made a part hereof, and to which reference is hereby made for a full and complete statement of the injunctive relief ordered by the Court.

And you are further notified that the hearing on the Application for Temporary Injunction is set at the Bexar County Courthouse in the City of San Antonio, Texas on the 25th day of February, 2013, A.D., at 9:00 o'clock A.M. in room 109, Presiding District Court at which time you are required to appear and show cause, if any, why said Injunction should not be granted as prayed for.

HEREIN FAIL NOT TO OBEY THIS WRIT, UNDER THE PAINS AND PENALTIES PRESCRIBED BY LAW! ISSUED AND GIVEN UNDER MY HAND AND SEAL OF OFFICE, AT SAN ANTONIO, TEXAS the 13th Day of February A.D., 2013.

LLOYD E KELLEY
ATTORNEY FOR PLAINTIFF
2726 BISSONNET ST 240
HOUSTON, TX 77005-1319



**Donna Kay McKinney**
**Bexar County District Clerk**

By: *Marc Garcia*, Deputy

RETURN

CAME TO HAND ON THE _____ DAY OF _____ ,A.D._____ AT _____ O'CLOCK ____.M. AND EXECUTED (NOT EXECUTED) ON THE _____ DAY OF _____ ,A.D.,_ BY DELIVERING TO ____ ___ _____ IN PERSON, A TRUE COPY OF THIS TEMPORARY RESTRAINING ORDER UPON WHICH I ENDORSED THE DATE OF DELIVERY. CAUSE OF FAILURE TO EXECUTE THIS TEMPORARY RESTRAINING ORDER IS _____.

TOTAL FEES: _____

_____
_____ COUNTY, TEXAS
BY _____

Original (Dk022)

**EXHIBIT 2**

NO. 2013- CI- 02253

| | | |
|---|---|---|
| RHODES HOLDINGS, LLC | § | IN THE DISTRICT COURT |
| RECAP MARKETING & | § | |
| CONSULTING LLP | § | |
| WEM EQUITY CAPTIAL | § | |
| INVESTMENTS, LTD | § | |
| ROBERT C. RHODES, | § | |
| DELTA S VENTURES LP, | § | |
| HUNTER M.A. CARR & | § | |
| WILLIAM MCILWAIN | § | |
|     Plaintiffs, | § | |
| | § | |
| | § | JURY TRIAL REQUESTED |
| vs. | § | |
| DAVID L. GORHAM | § | |
| MCI PARTNERS, LLC | § | BEXAR COUNTY, TEXAS |
| ARTHUR L. SMITH | § | |
| ANTONIO ESTRADA | § | |
| MURRAY R. NYE | § | |
| JOHN R. FLEMING & | § | |
| BERT TERRY DUNKEN JR | § | |
| LOU SOUMAS | § | |
|     Defendants. | § | 285th____JUDICIAL DISTRICT |

## TEMPORARY RESTRAINING ORDER &
## ORDER SETTING HEARING FOR TEMPORARY INJUNCTION

After considering Plaintiffs' application for temporary restraining order, the

pleadings, the affidavit, and arguments of counsel, the court finds there is evidence that

harm is imminent and if the court does not issue the temporary restraining order,

Plaintiffs' will be irreparably injured.

Such irreparable injury will occur because Defendants, and those working in

concert with them will move the assets of Digerati Technologies, Inc. ("Digerati") or

cause Digerati to default on its obligations.

The harm that will result if the temporary restraining order is not issued is

irreparable. Defendants are in the process of taking actions which are intended to denude

1

the Digerati Technologies, Inc. of its only assets of value. Defendants' conduct creates confusion in the marketplace and damages Digerati Technologies, Inc.'s credibility and reputation. Defendants' actions increase uncertainty that will likely further depress Digerati Technologies, Inc.'s stock price and make it more difficult for Plaintiff to access equity capital, borrow money, or obtain commercial credit. Defendant's actions also create unnecessary difficulties in dealing with the Securities and Exchange Commission, the Nevada Secretary of State, and other governmental and regulatory bodies.

Plaintiffs have no adequate remedy at law because the Defendants are continuing to inflict damages on Plaintiffs which are not measurable by any certain pecuniary standard, and no amount of money damages could undo the harm the Defendants are inflicting.

An ex parte order, without notice to Defendants, is necessary because there was not enough time to give notice to Defendants, hold a hearing, and issue a restraining order before the irreparable injury, loss, or damage would occur.

Therefore, the Court ORDERS that Defendants MCI Partners, LLC, David L. Gorham, Bert Terry Dunken Jr., Arthur L. Smith, John R. Fleming, Murray R. Nye, Antonio Estrada, and Lou Soumas and any person or entity acting in concert with them, including but not limited to its servicers, attorneys, agents, servants, employees, successors, heirs and assigns, are restrained and hereby enjoined from:

a) Moving any of the assets of Digerati Technologies, Inc. out of the company or executing any documents that would move or transfer the assets out of Digerati Technologies, Inc.

b)  Taking any action or making any statements to the effect that any of them are authorized to move any assets or alter any assets relating to or belonging to Digerati Technologies, Inc. or any of its affiliates or subsidiaries;

c)  Manipulating the price of any securities of Digerati Technologies, Inc.

d)  Accessing, changing the password on, or making any other changes to any bank or commercial account in the name of or used for the benefit of Digerati Technologies, Inc. or any of its affiliates or subsidiaries, whether those accounts are online or otherwise, or to any online accounts relating to or owned by Digerati Technologies, Inc. or any of its affiliates or subsidiaries.

e)  Filing any documents with any state or federal agency, self-regulatory organization, authority, regulatory body or other entity, including the Securities and Exchange Commission, any securities exchange, any transfer agent, any secretary of state, and any bank, purporting to be on behalf of Digerati Technologies, Inc. or any of its affiliates or subsidiaries.

f)  Making any SEC statements purporting to be on behalf of Digerati Technologies, Inc. or any of its affiliates or subsidiaries including Dishon Disposal, Inc., Hurley Enterprises, Inc., Oleum Capital LLC or MCI Partners, LLC.

g)  Assessing, changing the password on, or making any other changes to any website of Digerati Technologies, Inc. or any of its affiliates or subsidiaries including Dishon Disposal, Inc., Hurley Enterprises, Inc., Oleum Capital LLC or MCI Partners, LLC.

h)  Taking any other action designed to impair Digerati Technologies, Inc.'s ability to conduct its business.

3

i)  Destroying, altering, secreting, or disposing of any documents or electronic data or medium with any information or communication pertaining to Digerati Technologies, or Dishon Disposal, Inc., Hurley Enterprises, Inc., Oleum Capital LLC or MCI Partners, LLC.

The Court further orders the clerk to issue notice to Defendants MCI Partners, LLC, David L. Gorham, Bert Terry Dunken Jr., Arthur L. Smith, John R. Fleming, Murray R. Nye, Antonio Estrada, and Lou Soumas.  That the hearing on Plaintiffs' application for a temporary injunction is set for _Feb. 25_, 2013, at _9:00_ a.m./p.m.  The purpose of the hearing shall be to determine whether this temporary restraining order should be made a temporary injunction pending a full trial on the merits. This restraining order is effective and binding on against Defendants MCI Partners, LLC, David L. Gorham, Bert Terry Dunken Jr., Arthur L. Smith, John R. Fleming, Murray R. Nye, Antonio Estrada, and Lou Soumas and any person or entity acting in concert with them, including but not limited to its attorneys, servicers, agents, servants, employees, successors, heirs and assigns until the hearing on the application for temporary injunction or until further order of the court.

Bond is set at $ _200_ .

This order expires on _Feb. 25 th 2013 at 5:00. pm._ , 2013.

Signed on February _12_ , 2013, at _3:45_ a.m./p.m.

_[signature]_

PRESIDING JUDGE

4



2013CI02253 –B00001

**Certificate of District Clerk That Plaintiff(s)
Have Made Cash Deposit In Lieu Of
Temporary Restraining Order Bond**

C R T

The State of Texas
County of Bexar                                    285th **Judicial District Court**

I, Donna Kay M<sup>c</sup>Kinney, Clerk of the District Courts in and for Bexar County, Texas, do hereby certify that <u>RHODES HOLDINGS, LLC ET AL</u> in Cause No. <u>2013CI02253</u>, Styled <u>RHODES HOLDINGS, LLC ET AL</u> vs.<u>DAVID L GORHAM ET AL</u>, have this day deposited the sum of <u>TWO HUNDRED DOLLARS AND NO CENTS</u> (<u>$200.00</u>) cash, which is the amount ordered by the Court in lieu of a Temporary Restraining Order Bond.

WITNESS, Donna Kay M<sup>c</sup>Kinney, Clerk of the District Courts of Bexar County, Texas.

Given under my hand and seal of said Courts of Bexar County, Texas, on <u>February 12, 2013.</u>

Donna Kay M<sup>c</sup>Kinney
District Clerk, Bexar County, Texas

BY: *Stephanie De Leon*

Stephanie De Leon, Deputy

\* \* **RECEIPT REQUIRED FOR REFUND OF FUNDS**

FILED
DONNA KAY McKINNEY
DISTRICT CLERK
BEXAR COUNTY

13 FEB 12  PM 4: 12

DEPUTY
BY *Stephanie DeLeon*

CAUSE NO. 2013-CI-02253

| | | |
|---|---|---|
| RHODES HOLDINGS, LLC | § | IN THE DISTRICT COURT |
| RECAP MARKETING & CONSULTING | § | |
| LLP, WEM EQUITY CAPITAL | § | |
| INVESTMENTS, LTD., ROBERT C. | § | |
| RHODES, DELTA S. VENTURES LP, | § | |
| HUNTER M.A. CARR & WILLIAM | § | |
| MCILWAIN | § | |
| Plaintiffs, | § | BEXAR COUNTY, TEXAS |
| | § | |
| VS. | § | |
| | § | |
| DAVID L. GORHAM, MCI PARTNERS, | § | |
| LLC, ARTHUR L. SMITH, ANTONIO | § | |
| ESTRADA, MURRAY R. NYE, | § | |
| JOHN R. FLEMING & BERT TERRY | § | |
| DUNKEN, JR. AND LOU SOUMAS | § | |
| Defendants. | § | 285th JUDICIAL DISTRICT |

**DEFENDANTS ARTHUR L. SMITH AND ANTONIO ESTRADA'S
MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER
<u>AND VERIFIED PLEA IN ABATEMENT AND MOTION TO ABATE PROCEEDINGS</u>**

TO THE HONORABLE JUDGE OF SAID COURT:

Pursuant to Rule 680 of the Texas Rules of Civil Procedure, Defendants Arthur L. Smith and Antonio Estrada (Defendants) respectfully request that this Court dissolve the Temporary Restraining Order it entered two days ago and abate this case in favor of the dominant jurisdiction of the Harris County District Court, where this dispute was already and is pending. Defendants additionally request expedited hearing on an emergency basis.

<u>Summary</u>

The Plaintiffs in this case are the defendants, and affiliates of defendants, in a Harris County lawsuit over the exact same dispute. There have already been multiple hearings and orders entered in that case (the "First-Filed Harris County Lawsuit").

1

4481548.2

EXHIBIT
3

The Plaintiffs here (defendants there) are two brokers who put together a reverse merger and one minority shareholder in Digerati Technologies, Inc., one of the companies involved in that merger. Plaintiffs assert in this Court that there was fraud in connection with that reverse merger. They are correct, and they should know, because they committed that fraud. Plaintiffs continued the fraud by coming to this Court and obtaining an *ex parte* Temporary Restraining Order without disclosing to this Court that there is already an action pending against them, and in which they were restrained, in Harris County.

The Temporary Restraining Order the Plaintiffs have obtained from this Court, if maintained, makes it impossible for Digerati to operate. The Temporary Restraining Order should be dissolved, and the parties and their counsel, and this lawsuit should be abated in favor of the First-Filed Harris County Lawsuit.[1] This Motion is supported by the Declaration of Antonio Estrada attached hereto at Exhibit A.

Plaintiff's petition contains more false statements than one could possibly catalog and rebut in the time and space permitted here. What actually happened is set out below and in the declarations and relevant pleadings Digerati asserted in the First-Filed Harris County Lawsuit, which are attached hereto and incorporated herein by reference at Exhibit B. But even if all of Plaintiffs' allegations were true, they still could not support a Temporary Restraining Order in this case. Plaintiffs cannot dispute that they are brokers who put together a merger that they now claim was fraudulent. If Plaintiffs are correct about that, they certainly are not entitled to a Temporary Restraining Order to keep anyone from unwinding that fraudulent transaction.

## Background

The Temporary Restraining Order in this action involves who has the right to control Digerati Technologies, Inc. The Plaintiffs in this action are a collection of brokers who put

---

[1] Relevant pleadings and proof from the Harris County action are submitted herewith and incorporated herein.

2

4481548.2

together a merger and small minority shareholders who claim they have the right to control the company.  Defendants are: (a) the founder of the company and others who are currently trying to run the company on a daily basis; and (b) persons employed by or associated with the indisputable supermajority shareholder of the company.[2]

The transaction at the heart of this case is a reverse merger by which some successful oilfield services companies (Oleum)[3] were merging with a struggling telephony company (Digerati).  As a growing company, Oleum needed access to capital so it could expand.  It could access that capital more easily and more cheaply if it had publicly traded stock.  Digerati had publicly traded stock, but it was struggling and seeing little benefit from being publicly traded. The main point of the reverse merger was that Oleum would end up taking on Digerati's publicly traded shell and Digerati would give up its publicly traded shell in exchange for a small piece of the new company.  Oleum would end up owning more than 90% of the merged company. Digerati would own less than 10% and the brokers involved in the transaction would get a small percentage in addition to the cash they already received.  After the merger, the original operations of Digerati would be spun off, such that it would again be its own company, but no longer publicly traded, and Oleum would have the same operations it owned before merger, but it would now be publicly traded.

No one disputes that the reverse merger transaction closed.  After it closed, Oleum began finding irregularities.   Oleum found stock certificates issued to the brokers (the plaintiffs in this action) and companies they controlled, in amounts far in excess of what they were supposed to get.  Oleum also found that shares were being issued to someone that one of the Plaintiffs in this

---

[2] Curiously, the Plaintiffs chose not to sue the supermajority shareholder.  They only sued those persons who might act for it.

[3] Oleum is the majority owner of Waste Deep, which had purchased the two successful oilfield services companies that needed capital.  Oleum traded the shares it owned in Waste Deep for the supermajority position in Digerati.  In the interest of brevity and hopefully without too much sacrifice of accuracy, some corporate distinctions that are not germane to the issues before the court are ignored herein.

case said was a nominee or pseudonym for the attorney on the transaction.  Oleum found that the shell they had bought had millions of dollars of debt that could not be spun off.  The Plaintiffs in this case had represented to Oleum that the shell would not have any debt that could not be spun off with the original Digerati operations.[4]   Oleum also found that the merged entity would not be able to immediately access capital, which was the whole point of the transaction.  When Oleum looked into the brokers whom Oleum had paid $350,000 to bring it this lousy, fraudulent deal, Oleum found that one of them had a felony fraud conviction and the attorney they had recommended, who was supposed to get SEC approval of the transaction, was being sued by the SEC for fraud in connection with a prior reverse merger.

As a result of the closing that no one contests happened, Oleum was now the supermajority shareholder of Digerati.  Oleum used its supermajority shareholder status to remove two directors that the brokers (the Plaintiffs in this case) and their attorney had recommended for Digerati's board.  At the time of the merger the brokers had recommended that Digerati install a man named John Howell to be the CEO and Chairman of the Board.  When Mr. Howell saw the same irregularities Oleum saw, he resigned.  He has now provided a declaration discussing those irregularities.[5]  Another director suggested by the brokers and their lawyer also resigned.  Oleum  voted Digerati's founder and the person who is running its day to day operations, Art Smith, to be the Chairman of the Board (and also now sole director) and CEO. Digerati then terminated its contracts with the SEC-sued SEC lawyer and severed all ties with the brokers.  The attorney acknowledged to Digerati and to the SEC that he had been terminated.

---

[4] Plaintiff's claim that Art Smith and/or Antonio Estrada committed any fraud is ridiculous.  All of the debt was disclosed to Plaintiffs and Plaintiffs even took shares of Digerati that they were supposed to use to obtain consents from creditors for the movement of the debt to the subsidiary.
[5] Ex. 3 to Harris County Petition and Request for TRO.

Any reasonable person would have expected those brokers and their attorney to slink away and hope not to be sued. They did slink away at first, but only for a few weeks. After a few weeks, showing more nerve than sense, the directors that Oleum had removed and the lawyer that Digerati had terminated filed a suit in Nevada state court, purportedly on behalf of Digerati, against Oleum, Digerati's biggest shareholder. This was not any sort of derivative suit; they actually claimed that they were Digerati! They also made bogus filings with the SEC and tried to take other actions as if they were Digerati.

Digerati then filed suit in Harris County (where the terminated brokers, the terminated directors and the terminated attorney reside) and explained to the court that the terminated directors and the terminated lawyer had filed a suit in Nevada and made bogus filings with the SEC. That case has been pending in Harris County since February 4, 2013. Two of the three individual Plaintiffs are defendants in that case, while the third is one of their business partners. All of the other Plaintiffs are just paper entities created by those three individuals. One of the Plaintiffs in the case before this Court has been purposefully evading service in the Harris County action, although he knew of the Harris County Temporary Restraining Order against him within hours of its issuance. The Harris County Court entered a Temporary Restraining Order in the First-Filed Harris County Lawsuit making findings exactly contrary to those Plaintiffs presented to this Court. The Court in Harris County has modified the Temporary Restraining Order at the request of one of the Plaintiff in this case and it has abated the Temporary Restraining Order (for lack of authority to sue in Texas) at the request of one of the Plaintiffs in this case. Digerati now has proof of its authority to do business in Texas and it has moved to reinstate the Harris County Temporary Restraining Order. The parties have appeared before the

5

Harris County Court twice and they have a hearing on the reinstatement of the Temporary Restraining Order set for 1:30 p.m. on February 15, 2013.

Plaintiffs have now obtained an ex parte TRO from this Court without disclosing to this Court that the very matter at issue here is the subject of the previously-filed and currently pending action in Harris County District Court. But that is not all. The Temporary Restraining Order which Plaintiffs requested and obtained *ex parte* in this case includes some of the same restrictions that the Plaintiff here objected to and had the Court remove in the Harris County action. To make matters much worse still, the Temporary Restraining Order in this case restrains Arthur L. Smith and Antonio Estrada, the CEO and the CFO of Digerati who must operate the business on a daily basis. The Temporary Restraining Order prohibits them from, *inter alia*, accessing the company's bank accounts to do things like pay vendors or make payroll (which is already overdue).[6] And, while the Plaintiff Robert Rhodes told this Court that the bond in this case should be "nominal . . . because the relief sought would not cause any financial harm," the very same Robert Rhodes told the Harris County Court addressing the exact same dispute that "[i]f the TRO bond is to stand in any manner, due to the issues at stake and the harm that may be caused, the bond should be increased to at least $250,000.00."

The Harris County Court clearly has dominant jurisdiction. The suit there was first filed. All of the plaintiffs here are either defendants in the Harris County action, paper entities created and controlled by those Harris County defendants, or a business partner of those Harris County Defendants. While dominant jurisdiction attaches whenever there is even an "inherent interrelationship of the subject matter"[7] in the two cases, here the matter in dispute is exactly the same. The Plaintiff Robert Rhodes has told this Court that Plaintiffs need an injunction to keep

---

[6] Declaration of Antonio Estrada, attached hereto as Ex. A.
[7] *Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 248 (Tex. 1988).

6

one or more of the Defendants from improperly "control[ling] the company."[8]  The same Robert Rhodes told the Harris County Court that "[t]he heart of this controversy in this matter is who controls Digerati."[9]  Six of the restrained actions in the Temporary Restraining Order Plaintiffs obtained here are verbatim identical to provisions in the original Harris County Temporary Restraining Order against the Plaintiffs.

Moreover, this dispute is subject to a written agreement that exclusive venue for any such dispute would be in Harris County and Defendants challenge Bexar County venue.  That venue provision is §9.08 of the merger agreement which is the subject of this suit, and was agreed to by Digerati—the party on whose behalf Plaintiffs purports to derivatively bring this suit—and the shareholders of Waste Deep, who were represented by the Defendants named here.  In that provision the parties agreed that "any action between them shall be heard in Harris County, Texas."  Accordingly, this action would be improper even if the parties' dispute was not already pending in Harris County.

The Temporary Restraining Order in this case has made it impossible for Arthur L. Smith and Antonio Estrada to do their jobs for Digerati.  The Temporary Restraining Order should be dissolved and this matter should be abated in favor of the already-pending action in Harris County.

**Prayer**

For the above and foregoing reasons, Defendants Arthur L. Smith and Antonio Estrada respectfully request:

1) That the Temporary Restraining Order be dissolved;

2) That an emergency hearing be had on February 14, 2013;

---

[8] *See, e.g.*, Petition ¶ 21 and Rhodes Declaration at 2.
[9] Rhodes Motion to Vacate in Harris County at 4-5.

3)   That this case be abated in favor of the First-Filed Harris County Lawsuit; and for all other

relief to which Defendants are entitled I law or equity.


## NOTICE OF HEARING

Notice is hereby given that a hearing on Defendants' Motion to Dissolve Temporary

Restraining Order and Motion to Abate Proceedings has been scheduled in the above-styled and

numbered action at **9:00 a.m.** on **February 15, 2013**, in the Presiding District Court of Bexar

County, Texas.  Opposing counsel was advised of and requested to make any objection to the

designated time and date of hearing, and opposing counsel made no objection.

FEB 1 4 2013

Respectfully submitted,

Richard E. Price
Presiding Judge
285th District Court

THE LAW OFFICES OF PAUL FLACK

By: _____

Paul D. Flack
State Bar No. 00786930
1331 Lamar Street
Four Houston Center, Suite 1250
Houston, Texas 77010
(713) 705-3087 – Telephone
(888) 758-1967 – Facsimile

THE PRATT LAW FIRM PLLC

By: _____

Reagan D. Pratt
State Bar No. 00788218
Paul D. Flack
State Bar No. 00786930
1331 Lamar Street
Four Houston Center, Suite 1250
Houston, Texas 77010
(713) 936-2402 - Telephone
(713) 481-0231 - Facsimile

COX SMITH MATTHEWS INCORPORATED

8

112 East Pecan Street, Suite 1800
San Antonio, Texas 78205
(210) 554-5500 – Telephone
(210) 226-8395 – Facsimile

By: _____
     James M. Truss
     State Bar No. 00797577
     Corey F. Wehmeyer
     State Bar No. 24051903

**ATTORNEYS FOR DEFENDANTS**
**ARTHUR L. SMITH AND ANTONIO**
**ESTRADA**

**CERTIFICATE OF SERVICE**

     I hereby certify that a true and correct copy of the above and foregoing documents was this the 14th day of February 2013 served via fax and certified mail, return receipt requested to the following opposing counsel:

Aracelia Trevino     *Via Fax (w/out exhibits) & CMRRR#7196 9008 9111 7123 8645 (w/exhibits)*
The Law Office of Arcelia Trevino
The Milam Building
115 E. Travis, Suite 526
San Antonio, Texas 78205

George W. Gore     *Via Fax (w/out exhibits) & CMRRR#7196 9008 9111 7123 8652 (w/exhibits)*
The Gore Law Firm, P.C.
6200 Savoy, Suite 1150
Houston, Texas 77036

Lloyd E. Kelley     *Via Fax (w/out exhibits) & CMRRR#7196 9008 9111 7123 8669 (w/exhibits)*
The Kelley Law Firm
2726 Bissonnet, Ste. 240 PMB 12
Houston, Texas 77005

_____
Corey F. Wehmeyer

9

4481548.2